UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **COLUMBIA MUTUAL** § | | |
| **INSURANCE COMPANY,** § | | |
| § | | |
| **Plaintiff,** § | | |
| § | | |
| v. § | CIVIL ACTION NO. 3:19-cv-01044 | |
| § | | |
| **THE SOURCING GROUP, LLC d/b/a** § | | |
| **THE SOURCING SOLUTION,** § | | |
| **CFS ENTERPRISES CORPORATION,** § | | |
| **BIG D PROMOTIONS, LLC d/b/a** § | | |
| **ELEVATE BRAND MARKETING** § | | |
| **AND ELITE FULFILLMENT** § | | |
| **SOLUTIONS, LLC,** § | | |
| § | | |
| **Defendants.** § | | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Columbia Mutual Insurance Company files this Complaint for Declaratory Judgment and respectfully shows as follows:

**I.**
**PARTIES**

1. Plaintiff Columbia Mutual Insurance Company ("Columbia") is a Missouri corporation with its principal place of business at 2102 White Gate Drive, Columbia, Missouri 65202. It is a citizen of Missouri.

2. Defendant The Sourcing Group, LLC d/b/a The Sourcing Solution ("The Sourcing Solution") is a Texas limited liability company whose sole member is Russel A. Burchard. Mr. Burchard resides in Texas. The Sourcing Solution is a citizen of Texas, and may be served through its registered agent, Jeffrey W. Sampson, at 2701 Fondren Drive, Suite 127, Dallas, Texas 75206.

3. Defendant CFS Enterprises Corporation ("CFS") is a Texas corporation with its principal place of business at 5418 Saint Charles Avenue, Dallas, Texas 75223. CFS is a citizen of Texas, and may be served though its registered agent, Jeffrey W. Sampson, at 2701 Fondren Drive, Suite 127, Dallas, Texas 75206.

4. Defendant Big D Promotions, LLC d/b/a Elevate Brand Marketing ("Elevate") is a Texas limited liability company whose sole member is Jeffrey W. Sampson. Mr. Sampson resides in Texas. Elevate is a citizen of Texas, and may be served through its registered agent, Jeffrey W. Sampson, at 2701 Fondren Drive, Suite 127, Dallas, Texas 75206.

5. Defendant Elite Fulfillment Solutions, LLC ("Elite") is a Texas limited liability company whose members are Jeffrey W. Sampson, David M. Sedlin and Joel B. Gilhang. Mr. Sampson, Mr. Sedlin and Mr. Gilhang reside in Texas. Elite is a citizen of Texas, and may be served though its registered agent, Jeffrey W. Sampson, at 2701 Fondren Drive, Suite 127, Dallas, Texas 75206.

## II.
## JURISDICTION AND VENUE

6. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 and § 2201, *et seq*. Columbia is a citizen of Missouri and all Defendants are citizens of Texas. Therefore, complete diversity of citizenship exists and the amount in controversy, exclusive of interest and costs, exceeds $75,000. The Court has personal jurisdiction over Defendants because they have and continue to do business in Texas.

7. Pursuant to 28 U.S.C. § 1391(b)(1),(2), venue is proper in the Northern District of Texas because all Defendants reside in this District and a substantial part of the events or omissions giving rise to this action occurred in this District.

### III.
### FACTUAL BACKGROUND

8. This action presents a dispute under a commercial insurance policy issued by Columbia to CFS, Elevate and Elite (the "Policy").

9. Subject to its terms and conditions, the Policy provides computer fraud and funds transfer fraud coverage to CFS, Elevate and Elite, subject to a $100,000.00 per Occurrence limit and a $1,000.000 per Occurrence deductible.

10. Notably, while the Defendants are related entities, coverage under the Policy was not purchased for The Sourcing Solution.

11. On November 6, 2018, an accounting employee for CFS, Elevate, Elite and/or The Sourcing Solution received a series of emails purportedly sent by the president of The Sourcing Solution, Russ Burchard.

12. The emails stated that The Sourcing Solution had to pay an overdue invoice from a vendor in Hong Kong, and instructed the employee to wire $97,516.44 to pay the invoice.

13. The employee was not authorized or able to send wire transfers from The Sourcing Solution's bank account. Accordingly, to pay the invoice purportedly owed by The Sourcing Solution, the employee wired funds from accounts held by Elevate and Elite to the alleged vendor's bank account in Hong Kong.

14. On November 7, 2018, the employee received another email purportedly sent by Burchard. The email asked the employee to pay another invoice from a Hong Kong vendor purportedly owed by The Sourcing Solution.

15. To pay the invoice purportedly owed by The Sourcing Solution, the employee wired $93,806.78 from accounts held by Elevate and Elite to the alleged vendor's account in

Hong Kong. In total, $191,323.22 was wired to pay invoices purportedly owed by The Sourcing Solution.

16. The employee then transferred funds from the bank account for The Sourcing Solution to the accounts for Elevate and Elite cover the wired amounts.

17. None of the emails were sent by the actual Burchard and the invoices paid by The Sourcing Solution were fraudulent.

18. On November 8, 2018, the fraud was discovered when the actual Burchard noticed the withdrawals/transfers from The Sourcing Solution's account to reimburse Elevate and Elite.

19. On November 9, 2018, The Sourcing Solution reported the scam to the Hong Kong Police Force and subsequently worked with the FBI to attempt to recoup the wired funds.

20. The Sourcing Solution recovered a portion of the wired funds and the Bank of China Hong Kong froze another portion of the wired funds.

21. The Sourcing Solution, CFS, Elevate and/or Elite contend that the Policy provides coverage for the lost monies. After conducting an investigation, Columbia advised that The Sourcing Solution is not entitled to coverage under the Policy and, therefore, that the Policy does not provide coverage for the lost monies.

22. However, Columbia issued payment of $14,725.00 under the Policy for data compromise response expenses incurred by CFS, Elevate and/or Elite.

23. The Sourcing Solution, CFS, Elevate and/or Elite dispute Columbia's coverage determination and demand $152,467.50 under the Policy, which include the lost monies, bank transfer fees, legal fees incurred to recover some of the lost monies and legal fees to pursue the claim under the Policy.

# IV.
## CLAIM FOR DECLARATORY RELIEF

24. Pursuant to 28 U.S.C. § 2201, Columbia seeks a judicial declaration that the Policy does not provide coverage for the lost monies and the fees sought relating to the lost monies. The Policy's Commercial Crime Coverage Form provides, in relevant part, as follows:

> Throughout this Policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.
>
> * * *
>
> **A. Insuring Agreements**
>
> Coverage is provided under the following Insuring Agreements for which a Limit Of Insurance is shown in the Declarations and applies to loss that you sustain resulting directly from an "occurrence" taking place during the Policy Period shown in the Declarations, except as provided in Condition **E.1.k.** or **E.1.l.**, which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period To Discover Loss Condition **E.1.g.**:
>
> * * *
>
> **6. Computer And Funds Transfer Fraud**
>
>    **a.** We will pay for:
>
>       **(1)** Loss resulting directly from a fraudulent:
>
>          **(a)** Entry of "electronic data" or "computer program" into; or
>
>          **(b)** Change of "electronic data" or "computer program" within;
>
>       any "computer system" owned, leased or operated by you, provided the fraudulent entry or fraudulent change causes, with regard to Paragraphs **6.a.(1)(a)** and **6.a.(1)(b)**:
>
>          **(i)** "Money", "securities" or "other property" to be transferred, paid or delivered; or
>
>          **(ii)** Your account at a "financial institution" to be debited or deleted.
>
>       **(2)** Loss resulting directly from a "fraudulent instruction" directing a "financial institution" to debit your "transfer account" and to transfer, pay or deliver "money" or "securities" from that account.

\* \* \*

    **F. Definitions**

\* \* \*

    **12.** "Fraudulent instruction" means:

        a. With regard to Insuring Agreement **A.6.a.(2)**:

            **(1)** A computer, telefacsimile, telephone or other electronic instruction directing a "financial institution" to debit your "transfer account" and to transfer, pay or deliver "money" or "securities" from that "transfer account", which instruction purports to have been issued by you, but which in fact was fraudulently issued by someone else without your knowledge or consent; or

            **(2)** A written instruction (other than those covered under Insuring Agreement **A.2.**) issued to a "financial institution" directing the "financial institution" to debit your "transfer account" and to transfer, pay or deliver "money" or "securities" from that "transfer account", through an electronic funds transfer system at specified times or under specified conditions, which instruction purports to have been issued by you, but which in fact was issued, forged or altered by someone else without your knowledge or consent.

\* \* \*

    25.    The Policy's coverage applies to loss sustained by those entities that qualify as an Insured. The Sourcing Solution is not an Insured under the Policy. The Policy does not provide coverage for the lost monies because the fraudulent emails and invoices were sent to The Sourcing Solution, and no Insured sustained a loss. The Sourcing Solution reimbursed Elevate and Elite for the funds used to pay the invoices purportedly owed by The Sourcing Solution, and only The Sourcing Solution has incurred a loss. Accordingly, the Policy does not provide coverage for the lost monies or claimed fees.

    26.    Paragraph A.6.a.(1) of the insuring agreement does not apply because there was no loss resulting directly from a fraudulent entry of "electronic data" or a "computer program" into a "computer system" owned, leased or operated by CFS, Elevate, Elite or any other Insured. Nor was there a loss resulting directly from a fraudulent change of "electronic data" or

"computer program" within a "computer system" owned, leased or operated by CFS, Elevate, Elite or any Insured. The Sourcing Solution was the target and victim of the fraudulent scam. Moreover, the lost monies did not directly result from a fraudulent entry of "electronic data" or a "computer program" into a "computer system." Instead, the lost monies were the result of the employee's authorized transfer of funds, after failing to question the fraudulent emails or confirm that the invoices were owed by The Sourcing Solution.

27. Paragraph A.6.a.(2) of the insuring agreement is also inapplicable because there was no loss resulting directly from a "fraudulent instruction" directing a "financial institution" to debit the accounts of CFS, Elevate, Elite or any Insured and transfer, pay or deliver "money" or "securities" from that account. The Sourcing Solution was the target and victim of the fraudulent scam. Moreover, the lost monies were the result of the employee's authorized transfer of funds, after failing to question the fraudulent emails or confirm that the invoices were owed by The Sourcing Solution.

28. Further, the Policy provides:

**D. Exclusions**

  **1.** This insurance does not cover:

  * * *

  **f. Governmental Action**

  Loss resulting from seizure or destruction of property by order of governmental authority.

  **g. Indirect Loss**

  Loss that is an indirect result of an "occurrence" covered by this insurance including, but not limited to, loss resulting from:

  * * *

  (3) Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

    **h. Legal Fees, Costs And Expenses**

    Fees, costs and expenses incurred by you which are related to any legal action, except when covered under Insuring Agreement **A.2.**

\* \* \*

These exclusions preclude coverage for the portion of the lost monies seized by the Bank of China Hong Kong and the bank transfer fees and legal fees claimed by the Defendants.

    29.    The Policy also provides:

**4.**  Insuring Agreement **A.6.** does not cover:

    **a. Authorized Access**

    Loss resulting from a fraudulent:

    **(1)** Entry of "electronic data" or "computer program" into; or

    **(2)** Change of "electronic data" or "computer program" within;

    any "computer system" owned, leased or operated by you by a person or organization with authorized access to that "computer system", except when covered under Insuring Agreement **A.6.b.**

\* \* \*

    **d. Fraudulent Instructions**

    Loss resulting from an "employee" or "financial institution" acting upon any instruction to:

    **(1)** Transfer, pay or deliver "money", "securities" or "other property"; or

    **(2)** Debit or delete your account;

    which instruction proves to be fraudulent, except when covered under Insuring Agreement **A.6.a.(2)** or **A.6.b.**

These exclusions preclude coverage for the claimed loss. The claimed loss resulted from the employee's authorized transfer of funds, after failing to question the fraudulent emails or confirm that the invoices were owed by The Sourcing Solution.

30. The Policy also contains the following conditions to coverage:

**E. Conditions**

The following conditions apply in addition to the Common Policy Conditions:

\* \* \*

**n. Ownership Of Property; Interests Covered**

The property covered under this insurance is limited to property:

(1) That you own or lease;

(2) That is held by you in any capacity; or

(3) For which you are legally liable, provided you were liable for the property prior to the time the loss was sustained.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this insurance must be presented by you.

The loss of property for which Defendants seek indemnity is property of The Sourcing Solution, which is not an insured under the Policy. It is therefore not covered under the Policy.

31. The Policy also contains the following condition:

**p. Recoveries**

**(1)** Any recoveries, whether effected before or after any payment under this insurance, whether made by us or by you, shall be applied net of the expense of such recovery:

**(a)** First, to you in satisfaction of your covered loss in excess of the amount paid under this insurance;

**(b)** Second, to us in satisfaction of amounts paid in settlement of your claim;

**(c)** Third, to you in satisfaction of any Deductible Amount; and

**(d)** Fourth, to you in satisfaction of any loss not covered under this insurance.

Even if the claimed loss is covered by the Policy, Elevate and Elite recovered all funds wired out of their accounts from The Sourcing Solution and, therefore, no payment is due by Columbia.

Further, no payment is due for any amounts recovered from the Bank of China Hong Kong or any other source.

32. In the alternative, Columbia seeks a declaration from the Court that construes the rights and obligations of the parties pursuant to the Policy.

## V.
## CONCLUSION AND PRAYER

Columbia respectfully prays that the Court declare that:

1. The Sourcing Solution is not entitled to coverage under the Policy and the lost monies were incurred by The Sourcing Solution;

2. The Policy does not provide coverage for the claimed loss and fees; and

3. The funds wired from the accounts of Elevate and Elite, and for which Elevate and Elite were fully reimbursed by The Sourcing Solution, do not constitute covered loss under the Policy.

In the alternative, Columbia prays that the Court issue a declaration construing the rights and obligations of the parties pursuant to the Policy. Columbia further prays for any other and further relief to which it may be justly entitled, whether at law or in equity.

Respectfully submitted,

By: */s/ Omar Galicia*
Omar Galicia
State Bar No. 24012667
omarg@tbmmlaw.com
Matthew Rigney
State Bar No. 24068636
mattr@tbmmlaw.com
Michael A. Hewitt
State Bar No. 24092510
michaelh@tbmmlaw.com
TOLLEFSON BRADLEY MITCHELL & MELENDI, LLP
2811 McKinney Avenue, Suite 250 West
Dallas, Texas 75204
(214) 665-0100
(214) 665-0199 (fax)

**ATTORNEYS FOR PLAINTIFF COLUMBIA MUTUAL INSURANCE COMPANY**